IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CLEVELAND G. KITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 11-0444-WS-N |
| | ) |
| BILL VANN COMPANY, INC., et al., | ) |
| | ) |
| Defendants. | ) |

# ORDER

This matter is before the Court on the plaintiff's motion for remand, motion for remand based on additional grounds, and motion for expedited consideration of motion for remand. (Docs. 58, 59, 90). The parties have presented briefs and evidentiary materials in support of their respective positions, (Docs. 58-59, 67-68, 70-75, 78-80, 87-92, 102), and the motions are ripe for resolution.

# BACKGROUND

The plaintiff sued a number of defendants in state court to recover for injuries, including malignant mesothelioma, allegedly caused by exposure to asbestos. After his discovery deposition disclosed that he claimed exposure occurring on Navy vessels and at military installations including Guantanamo Bay, defendants Cummins Inc. ("Cummins") and Warren Pumps LLC ("Warren") filed a notice of removal. (Doc. 1). Warren removed under the "federal officer" removal statute, 28 U.S.C. § 1442(a), based on the plaintiff's alleged exposure aboard the *U.S.S. Wisconsin*, for which vessel Warren supplied pumps insulated with asbestos. Warren and Cummins both removed on the basis of "federal enclave" jurisdiction, due to the plaintiff's alleged exposure at Guantanamo Bay and other military installations. Apparently all co-defendants filed consents and/or joinders in the removal. (*Id.*, Exhibit D). Defendant CBS Corporation

[1]

("CBS")[1] filed a separate notice of consent to removal in which it separately claimed removal was proper as to it under federal officer removal due to its provision of propulsion turbines for the *Wisconsin* that were insulated with asbestos.  (Doc. 6; Doc. 67 at 1-2).  Defendant Buffalo Pumps, Inc. did likewise.  (Doc. 7).

## DISCUSSION

### I. Motion to Expedite.

The multi-district litigation panel ("MDL panel") has entered a conditional transfer order, to which the plaintiff has objected.  The plaintiff seeks expedited consideration of his motions for remand because, given his mesothelioma, he doubts he will survive what he predicts will be a long sojourn in the land of MDL.  (Doc. 58 at 2-3).  Despite judicial invitation to do so, (Doc. 60 at 1), the defendants declined the opportunity to oppose expedited consideration.[2]  Accordingly, the motion to expedite will be granted.

### II. Motions for Remand.

The defendants base removal on federal officer removal and federal enclave jurisdiction.  Before reaching the merits of these grounds, the Court addresses the plaintiff's argument that he effectively disclaimed anything that could support removal under them.

---

[1] CBS is a successor in interest and not itself a past purveyor of asbestos-containing products.  For convenience, the Court describes both the defendant and the predecessor entities as CBS.

[2] Warren and Cummins devote one footnote to dispelling the plaintiff's suggestion that MDL litigation is a "black hole."  (Doc. 68 at 30 n.6).  Whatever the impact of their statistical and anecdotal evidence, they do not use it to articulate any argument that the motion for expedited consideration should be denied.  They do not, for example, note or apply the test adopted by the Court for considering motions to stay resolution of motions to remand pending transfer to an MDL court.  *Betts v. Eli Lilly & Co.*, 435 F. Supp. 2d 1180, 1182 (S.D. Ala. 2006).

### A. Disclaimer.

"[T]he plaintiff expressly disclaims every claim arising under the Constitution, treaties or laws of the United States (including any claim arising from an act or omission on a federal enclave, or by any officer of the United States or any agency or person acting under him/her under color of such office …." (Complaint at 13-14). It is this language on which the plaintiff relies for his disclaimer argument.

As a general matter, "the plaintiff [is] the master of the claim …." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Thus, "he or she may avoid federal jurisdiction by exclusive reliance on state law, even where a federal claim is also available." *Dunlap v. G&L Holding Group, Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004) (internal quotes omitted). For the same reason, a plaintiff can avoid a federal forum by specifically claiming under $75,000, unless the removing defendant proves to a legal certainty that the amount in controversy exceeds that amount. *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Subject to rules governing fraudulent joinder, necessary parties and the like, a plaintiff may also be able to thwart removal by his selection of defendants. Given this backdrop, it is likely that a plaintiff may similarly defeat removal by electing not to sue for all the wrongs that a defendant has done him. The Court indulges that assumption for present purposes.

Had the plaintiff disclaimed any claim arising from exposure aboard a Navy vessel or while on a military installation, he might well have prevailed on his argument. In that event, he could not be suing for any exposure occurring on a federal enclave or due to a defendant's provision of asbestos-containing products under the direction of a federal officer. Several courts have found such specific pleading disclaimers adequate to preclude removal.[3]

---

[3] *See Powers v. Allis-Chalmers Corp. Product Liability Trust*, 2010 WL 2898287 at *1-2 (N.D. Cal. 2010) (waiver of claims "arising out of or related to asbestos exposure to or on
(Continued)

The plaintiff's disclaimer, however, is much more limited. He does not disclaim suit as to all exposure occurring at Guantanamo and other military installations, by name or more generally. Instead, he disclaims suit only as to exposures "on a federal enclave." This phraseology begs the question whether Guantanamo and the other military installations mentioned in his deposition actually constitute "federal enclaves" for purposes of removal. The point is not an idle one, as the plaintiff goes to great lengths in his briefing to deny that these locations are in fact federal enclaves. That is, despite his disclaimer the plaintiff insists that he can sue for exposure occurring at Guantanamo and other military installations. The plaintiff's disclaimer, in short, does not eliminate the federal enclave issue from the lawsuit, and it is therefore ineffective to preclude removal on the basis of federal enclave.

The same is true with respect to federal officer removal. The plaintiff does not disclaim suit as to all exposure on Navy vessels but only those exposures which, in his own estimation, occurred as a result of a defendant's operation within the bounds of Section 1442(a), and the plaintiff stridently insists that none of the defendants fall within this section. The disclaimer does not eliminate any question of federal officer removal but simply seeks to force this federal issue to be resolved in state court.

---

military or federal government aircraft" precluded federal officer removal); *Hopkins v. Buffalo Pumps, Inc.*, 2009 WL 4496053 at *6-7 (D.R.I. 2009) (express exclusion of claims other than at two identified non-governmental sites precluded federal officer removal); *Madden v. A.H. Voss Co.*, 2009 WL 3415377 at *2-3 (N.D. Cal. 2009) (express exclusion of "plaintiff's asbestos exposure at military and federal government jobsites and aboard U.S. Navy vessels" precluded federal officer removal); *Debrocke v. Allis-Chalmers Corp. Product Liability Trust*, 2009 WL 1464153 at *1-2 (N.D. Cal. 2009) (statement that "Plaintiff's claims against [a certain defendant] exclude plaintiff's asbestos exposure at military and federal government worksites and aboard U.S. Navy vessels" precluded federal officer removal).

A number of cases have ruled that purported disclaimers of a piece with the plaintiff's are inadequate to prevent removal.[4]  Their explanations generally are not compelling,[5] but the Court finds itself in agreement with Judge Jordan in *Marley v. Elliot Turbomachinery Co.*, 545 F. Supp. 2d 1266 (S.D. Fla. 2008), who analyzed a disclaimer substantively identical to the one under consideration.

> This disclaimer is circular.  Its applicability depends on a determination of the core question in this case:  whether the defendants' purported omission – failure to warn – was required or caused by their contractual relationship with the Navy.  If the failure to warn was required by the Navy, the disclaimer applies and the plaintiffs' claims fail as a matter of law.  If the failure to warn was not required by the Navy, then the disclaimer does not apply.  The problem with this argument is that the defendants have the right to have this question decided in federal court.

*Id*. at 1274.

The plaintiff suggests that he can now effectively waive claims against the Navy contractor defendants.  (Doc. 90 at 8-10).  Such a gesture would come too late to affect the propriety of the defendants' removal.  *E.g., Connecticut State Dental Association v. Anthem Health Plans, Inc*., 591 F.3d 1337, 1351 n.9 (11th Cir. 2009) ("Although Plaintiffs reference their amended complaints in their briefs, we consider the original complaints because removal jurisdiction is determined at the time of removal, and events

---

[4] *See In re:  Asbestos Products Liability Litigation (No. VI)*, 770 F. Supp. 2d 736, 740-43 (E.D. Pa. 2011); *Corley v. Long-Lewis, Inc.*, 688 F. Supp. 2d 1315, 1318, 1329 (N.D. Ala. 2010); *Despres v. Ampco-Pittsburgh Corp*., 577 F. Supp. 2d 604, 607-08 (D. Conn. 2008);  *O'Connell v. Foster Wheeler Energy Corp*., 544 F. Supp. 2d 51, 54 n.6 (D. Mass. 2008); *Redman v. A.W. Chesterton Co*., 2007 WL 4447729 at *3 (N.D. Cal. 2008); *Ballenger v. Agco Corp.*, 2007 WL 1813821 at *1-2 (N.D. Cal. 2007).

[5] They tend to stress that federal officer removal represents a statutory exception to the "well-pleaded complaint" rule, thus allowing removal to be based on a federal defense.  True enough, but a federal defense to a claim that is not asserted presumably would not justify removal.  It is the plaintiff's failure to employ language in his disclaimer actually eliminating any claim based on exposures potentially triggering federal officer removal (or federal enclave jurisdiction) that renders the disclaimer ineffective.

occurring after removal … do not oust the district court's jurisdiction.") (internal quotes omitted).

For the reasons set forth above, the Court rules that neither the disclaimer expressed in the complaint nor the waiver articulated in brief precludes removal.

### B. Federal Officer Removal.

"A civil action … against any of the following may be removed by them …:  (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office …." 28 U.S.C. § 1442(a)(1). The statute, as interpreted, establishes three requirements for removal by a non-governmental defendant.[6]

First, the removing defendant must be one "acting under" an officer of the United States when carrying out the acts for which it is sued. *Watson v. Philip Morris Companies*, 551 U.S. 142, 147 (2007). Second, there must be "a causal connection between the charged conduct and asserted official authority." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). The parties agree that the defendants satisfy these requirements only if the Navy held direct and detailed control over their provision of products containing asbestos for incorporation in naval vessels. (Doc. 59 at 4; Doc. 67 at 13; Doc. 68 at 11-12; Doc. 90 at 26).[7]

The third requirement for removal under Section 1442(a) is that "federal officer removal must be predicated on the allegation of a colorable federal defense." *Mesa v.*

---

[6] The plaintiff does not assert that an artificial entity cannot be a "person" within Section 1442(a).

[7] The parties cite *Fung v. Abex Corp.*, 816 F. Supp. 569 (N.D. Cal. 1992), for this proposition. *See id.* at 572 (to satisfy these requirements, "[a] majority of courts have held that the federal official must have direct and detailed control over the defendant.") (internal quotes omitted).

*California*, 489 U.S. 121, 129 (1989).  To be colorable, the defense need not be "clearly sustainable" but merely "plausible."  *Acker*, 527 U.S. at 432 (internal quotes omitted); *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996).

The federal defense asserted here is the "government contractor defense."  Under that defense, "[l]iability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably specific specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988).

The plaintiff believes it more difficult for a defendant to justify removal of a failure-to-warn claim than of a defective design claim.  He admits that his complaint contains defective design allegations against "[e]ach Defendant," (Complaint at 12, ¶ 58(a), (b)), but he insists that the complaint's disclaimer effectively eliminated any design defect claim as to the Navy contractor defendants.  His theory is that, since he knew full well that products supplied by Navy contractors typically are "designed per specific [N]avy specifications including the use of asbestos," he would have been foolish to include a design defect claim against these defendants.  (Doc. 87 at 6-7; Doc. 90 at 7-8).  Perhaps so, but the explicit language of the complaint accuses all defendants – necessarily including the Navy contractor defendants – of defective design and, as discussed in Part II.A, his disclaimer is ineffective.  The complaint indisputably alleges that the Navy contractor defendants provided defectively designed products including asbestos.[8]

---

[8] The plaintiff now "chooses not to pursue design defect claims against the named Navy contractor Defendants …."  (Doc. 90 at 9).  All well and good but, as discussed in Part II.A, the gesture comes too late to affect the propriety of removal.

CBS has submitted an affidavit for the proposition that "[a]ll aspects of the design, performance requirements, and materials used for the construction of the main propulsion turbines, turbine generators and related equipment, including thermal insulation, were specified by" the Navy and directly enforced at its plant by naval officers. (Gate Affidavit, ¶ 7). "Military specifications affirmatively required the use of asbestos-containing thermal insulation in relation to that equipment." (*Id.*, ¶ 8). The propulsion turbines, related equipment and turbine generators were "built in accordance with the Navy specifications in existence at the time and w[ere] approved and accepted by the Navy as being in accordance with those specifications." (*Id.*, ¶ 29). The intervening paragraphs flesh out these statements in considerable detail. The plaintiff offers no response to CBS's showing,[9] which the Court concludes satisfies the first two requirements for removal as well as the first two elements of a colorable government contractor defense.

To meet the final element of the government contractor defense, CBS relies on the affidavit of Dr. Samuel Forman. (Doc. 67, Exhibit E). Dr. Forman was tasked by the Navy to conduct a comprehensive review of the Navy's awareness of and response to the health hazards of asbestos, which he performed. (*Id.*, ¶¶ 8-10). He concludes that, during the period when CBS supplied asbestos-containing materials for the *Wisconsin*, the Navy's knowledge of asbestos was "state-of-the-art" and "quite complete when compared to available knowledge." (*Id.*, ¶¶ 19-20, 56). Dr. Forman describes in some detail the

---

[9] On the contrary, the plaintiff concedes that "many products designed by contractors for the United States Navy are designed per specific [N]avy specifications including the use of asbestos" and that "Navy contractors had no control over the use of asbestos in the products and/or equipment manufactured according to specific Navy criteria." (Doc. 87 at 7; Doc. 90 at 8).

[8]

Navy's awareness of dangers posed by asbestos and its efforts to reduce exposure during the relevant time period. (*Id.*, ¶¶ 22-24, 29-30, 33-34).[10]

The plaintiff has filed a motion to strike Dr. Forman's affidavit. (Doc. 89). The motion, however, is directed exclusively to perceived deficiencies in his affidavit as it relates to the plaintiff's failure-to-warn claims; it is completely irrelevant to his defective design claims.

The plaintiff has submitted discovery responses from CBS stating that, during the relevant time period, it "learned that inhalation of certain types and quantities of asbestos fibers, over significant periods of time, was being associated with increased risks of disease for some people." (Doc. 87, Exhibit A at 20-21). The plaintiff argues that CBS has, by this response, "admitted to knowing of the hazards of asbestos" at the relevant time. (Doc. 87 at 10). CBS may have admitted having some knowledge of some hazards, but the question is whether CBS knew about dangers of which the Navy was ignorant. The plaintiff neither makes such an allegation nor attempts to support it, and CBS's rather bland discovery responses do not prevent Dr. Forman's affidavit from making it colorable that CBS at the relevant time did not know about dangers in the use of asbestos that were unknown to the Navy. The government contractor defense thus remains intact for purposes of removal.

In a similar vein, the plaintiff points to deposition testimony from a Navy admiral which, he says, refutes Dr. Forman's affidavit concerning the state of the Navy's knowledge at the relevant time. (Doc. 90 at 23). The threshold problem with this argument is that the plaintiff has not submitted the deposition testimony on which he

---

[10] The *Wisconsin* was commissioned in 1944, (Doc. 67 at 4 n.2), and CBS supplied the turbines and other equipment before then. The plaintiff apparently worked aboard the *Wisconsin* in the late 1980's, (Doc. 1 at 4; Doc. 90 at 7), but he has not argued that CBS retained a perpetual duty to keep the Navy apprised of any new knowledge of asbestos dangers it acquired after delivering the equipment and having it accepted as conforming to specifications. At any rate, Dr. Forman's affidavit supports the proposition that the Navy's awareness of asbestos hazards remained cutting-edge throughout the period of the plaintiff's exposure aboard the *Wisconsin*.

relies,[11] so there is in fact no testimonial evidence on file with which to counter CBS's evidence. Even if there were some inconsistency shown by the plaintiff, he has not explained how a tension in the evidence precludes Dr. Forman's affidavit from making CBS's defense colorable.

CBS has thus met all the requirements for removal under Section 1442(a). As a final argument, the plaintiff argues that removal of an asbestos case under that section is now impossible because the federal government so heavily regulates the use of asbestos that state proceedings cannot adversely affect future government contracts. (Doc. 87 at 4-6). The plaintiff relies on *Good v. Armstrong World Industries, Inc.*, 914 F. Supp. 1125 (E.D. Penn. 1996), to support his position.

*Good* was another case alleging exposure to asbestos-containing products supplied to the Navy by CBS. The Court ruled that CBS satisfied all elements of a colorable federal contractor defense but determined that removal was unnecessary to uphold the policies underlying Section 1442(a), which it identified as avoiding state interference with the implementation of federal policy and avoiding state manipulation of a federal defense. 914 F. Supp. at 1130-31. The *Good* Court identified the federal interest underlying the government contractor defense as "protecting future defense procurement," an interest it did not believe could be adversely affected by an asbestos case since it was "common knowledge" that the military no longer uses asbestos. *Id*. at 1130. The Court also concluded that the policy of avoiding state manipulation of a federal defense was not in play because the federal contractor defense "raises straightforward common law issues that state courts are as adept at handling as the federal judiciary." *Id*. at 1131.

The plaintiff cites, and the Court has located, no case following *Good* in this regard. Nor is the Court inclined to do so. Assuming without deciding that *Good*

---

[11] The deposition is described as Exhibit G, (Doc. 90 at 22), but the plaintiff's exhibits end with F-2. (Doc. 91).

[10]

accurately expresses the policies informing Section 1442(a) and the impact on them of remanding a case involving the provision of asbestos-containing products to the military, the Court's role is to enforce the statute, not the policies motivating its enactment. When as here the requirements for removal under Section 1442(a), as construed by the Supreme Court, are satisfied, this Court has no authority to order remand because removal, though statutorily proper, is unnecessary to fulfill congressional policy.[12] If, as the *Good* Court apparently believed, Section 1442(a) sometimes allows removal when no legislative policy is advanced thereby, that is a matter for Congress to rectify, not the Court.

"It is well settled that, if one claim cognizable under Section 1442 is present, the entire action is removed, regardless of the relationship between the Section 1442 claim and the non-removable claims." *Nadler v. Mann*, 951 F.2d 301, 306 n.9 (11th Cir. 1992) (internal quotes omitted). The plaintiff does not assert otherwise. Because it is clear that Section 1442(a) removal by CBS of the plaintiff's defective design claim was proper, it is unnecessary for the Court to consider whether removal was likewise proper as to the defective design claims against the other Navy contractor defendants, the failure-to-warn claims against any Navy contractor defendant, or the federal enclave removal by Warren and Cummins.

---

[12] *International Primate Protection League v. Administrators of Tulane Educational Fund*, 500 U.S. 72 (1991), is not, as the plaintiff maintains, to the contrary. The Supreme Court did not deny agencies the right to remove under Section 1442(a) because there was no good policy reason to allow it but because the language of Section 1442(a) does not extend the opportunity for removal to agencies in the first place. *Id*. at 79-84. The High Court discussed policy only to refute the defendants' position that the statutory exclusion of agencies would produce absurd results. *Id*. at 84-87.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion to expedite is **granted** and his two motions for remand are **denied**.[13]

DONE and ORDERED this 29th day of September, 2011.

s/ WILLIAM H. STEELE<br>
CHIEF UNITED STATES DISTRICT JUDGE

---

[13] The plaintiff's two motions to exclude evidence, (Docs. 88, 89), are **denied as moot**, as they are limited to witnesses and/or legal theories not made the basis of the Court's ruling on the motions for remand.